**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCHES OF: | ) **UNDER SEAL** |
| | ) |
| | ) Case Nos: |
| 2456 Elvans Road, S.E., Washington, D.C. | ) |
| | ) |
| | ) |
| 1995 Lincoln Town Car, VIN # 1LNLM81W4SY621230 | ) |
| | ) |
| _____ | ) |

**AFFIDAVIT IN SUPPORT OF
APPLICATIONS UNDER RULE 41 FOR
WARRANTS TO SEARCH AND SEIZE**

**I.   INTRODUCTION AND EXPERIENCE**

I, David Cheplak, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, do state:

1. Your affiant has been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) for approximately two years and is currently assigned to the Baltimore Field Division. Your affiant has attended the United States Department of Homeland Security's Criminal Investigator Training Program and ATF's Special Agent Basic Training, both located in Glynco, Georgia, for a combined period of (26) twenty-six weeks. Your affiant has received extensive training; both formal and on-the-job, in the provisions of the Federal Firearms Laws administered under Title 18 and Title 26 of the United States Code. Prior to joining ATF, your affiant received a bachelor's and master's degrees from the University of Florida and worked for two years as a Federal Police Officer with the Federal Bureau of Investigation (FBI) Police Unit at FBI Headquarters in Washington, DC and the New York Field Office in Manhattan, NY.

2. Your affiant has conducted, assisted or participated in multiple investigations related to firearms, illegal drugs, arson, explosives, and criminal street gangs. To successfully conduct these investigations, your

1

affiant has utilized a variety of investigative techniques and resources, including undercover operations, physical and electronic surveillance, subpoenas, criminal record and database queries, sources of information, informants and other techniques which may or may not be described in this affidavit. Your affiant's training, experience and conversations with other special agents and law enforcement personnel has helped your affiant become familiar with the methods and techniques utilized by the criminal element; all of which have been useful and relevant during this investigation.

3. Your affiant knows, based on his training and experience, that most people store their firearms in their homes; that persons who possess firearms usually possess other items related to firearms, such as: gun cases, ammunition, ammunition magazines, holsters, spare parts, cleaning equipment, photographs of firearms and receipts for the purchase of these items.

4. Your affiant knows that 18 U.S.C. § 922(k) makes it unlawful for any person to knowingly ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

5. Your affiant knows that 18 U.S.C. § 922(j) makes it unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of stolen firearms and ammunition knowing or having reason to believe the firearm or ammunition is stolen.

6. Your affiant knows that 18 U.S.C. § 371 makes it unlawful for two or more persons to conspire to commit crimes against the interests of the United States, to wit, to violate 18 U.S.C. § 922(k) and 18 U.S.C. § 922(j).

7. This affidavit is submitted to this court in support of search warrants for: 2456 Elvans Road Southeast, Washington, D.C.; and a 1995 Lincoln Town Car, bearing Maryland license tag 9FD T24 and VIN#1LNLM81W4SY621230, which are described more fully below.

8. The facts set forth in this affidavit are based upon my personal observations, my knowledge, training, experience, and information obtained from other law enforcement officers, special agents and witnesses.

This affidavit is intended to show that there is probable cause for the requested search warrant and does not purport to set forth all of my knowledge of, or investigation into this matter.

9. Based on the investigation, to include interviews, physical surveillance, physical evidence and documentary evidence obtained, your affiant submits that there is probable cause to believe that in or about June 2009, Jason Thomas SCOTT and Marcus Dermanellian HUNTER committed violations of 18 U.S.C. § 922(j) (possession and sale of stolen firearms), 18 U.S.C. § 922(k) (possession of firearms with obliterated serial numbers), and Title 18 U.S.C. § 371 (conspiracy).

## II. DESCRIPTIONS OF PREMISES AND VEHICLES TO BE SEARCHED

This affidavit is respectfully submitted in support of applications for search warrants to search the following and seize evidence from therein:

10. The premises located at 2456 Elvans Road Southeast, Washington, DC 20020, further described as a multi-unit town home residence with brick on the first level and beige siding on the second level. The building has a brown shingled roof. The residence is the building that is perpendicular to Elvans Road and is to the right of the parking lot's entrance. The residence is the first unit on the left side of the building. The house number of 2456 is affixed to the brick and is located on the left side of the door. The residence is the primary address of Marcus Dermanellian HUNTER, who is described as a black male, 6'0" in height, 150 lbs., black hair and brown eyes.

11. The primary vehicle of Marcus Dermanellian HUNTER described as a gray 1995 Lincoln Town Car bearing Maryland license plate 9FD T24 and VIN # 1LNLM81W4SY621230.

## III. FACTS AND CIRCUMSTANCES SUPPORTING PROBABLE CAUSE

On or about June 4, 2009, a concerned citizen approached the Prince George's County Police Department (PGPD) with information regarding individuals known to him/her as "Jason" and "Marcus" who were selling stolen firearms in the Landover, MD area. PGPD Detectives contacted the Bureau of Alcohol, Tobacco,

Firearms & Explosives (ATF) and the concerned citizen (hereinafter referred to as CI #1) was subsequently interviewed by your affiant and provided the following information:

12. CI #1 told ATF agents that the individuals selling stolen firearms are known to him/her as "Jason" (later identified by law enforcement as Jason Thomas SCOTT, B/M, 5'8", 150 lbs, , Black hair, brown eyes, and "Marcus" (later identified by law enforcement as Marcus Dermanellian HUNTER, B/M, 6'0", 150 lbs, black hair, brown eyes,

13. CI #1 stated that he/she knows that SCOTT and HUNTER are employed at the United Parcel Service Customer Service Facility located at 8440 ARDWICK-ARDMORE ROAD, LANDOVER, MD (hereinafter referred to as UPS).

14. CI #1 described SCOTT as a thin black male approximately 5'9" with short hair who drives a blue Toyota Camry. CI #1 described HUNTER as a thin black male approximately 6'0" with short hair who wears eyeglasses and drives a gray Lincoln Town Car.

15. CI #1 told your affiant that he/she had on previous occasions purchased items from SCOTT and/or HUNTER that the CI reasonably believed to be stolen. Specifically, within the past two years, CI #1 had previously purchased electronic items from SCOTT that SCOTT told him/her were stolen. Additionally, on at least one occasion within the past two years, CI #1 purchased two firearms from SCOTT that SCOTT told him/her were stolen. The CI told your affiant that HUNTER accompanied SCOTT during several of the illegal transactions.

16. CI #1 told your affiant that on or about June 3, 2009, his/her associates met with SCOTT in the parking lot of UPS. CI #1 stated that his/her associates told him/her that during their meeting with SCOTT, SCOTT opened the trunk of his blue Toyota Camry and displayed several firearms to include assault-style weapons and silencers. SCOTT told CI #1's associates that the guns were stolen and that he was trying to sell the firearms. CI #1's associates noted that SCOTT told them that he had AR-15 and AK-47 type rifles along with .22 caliber pistols and silencers that fit them. SCOTT further stated that the

4

guns needed to have their serial numbers obliterated; using words to the effect of "ATF is looking for these firearms".

17. A criminal background check revealed that CI #1 has a 2006 conviction from Montgomery County Circuit Court, Montgomery County, MD for 2nd degree burglary for which he/she received one year probation.

18. Based on the events described herein, CI #1 has been paid $1000 as of June 29, 2009, for information provided to law enforcement and his/her assistance in this investigation.

**ATTEMPTED CONTROLLED PURCHASE ON JUNE 5, 2009 AND EVIDENCE RELATED TO PRITCHARD LANE**

19. On or about June 5, 2009, at the direction of ATF agents, CI# 1 had his/her associate contact SCOTT via a text message to telephone number (301) 355-5286. During this contact, CI#1's associate attempted to arrange the purchase of firearms from SCOTT. SCOTT replied via text message that he would meet CI#1 and his/her associate at 5:30pm at the UPS facility in Landover, MD.

20. At approximately 5:00pm, CI #1 was searched for the presence of contraband with negative results. CI #1 was provided with a recorder/transmitter and $3000 of pre-recorded United States currency as buy money to purchase firearms from SCOTT. CI #1 met with his/her associate and the two were followed to the UPS parking lot where surveillance units observed CI #1 park his/her vehicle.

21. At approximately 6:15pm, surveillance units observed a blue Toyota Camry driven by an individual matching the description of SCOTT enter the parking lot of the UPS. Agents heard CI #1 via a covert transmitter say that SCOTT had arrived. Agents then observed SCOTT exit the Camry and walk directly over to CI #1's vehicle where he entered CI #1's vehicle and began a conversation with CI #1 and CI #1's associate. Surveillance units were able to hear via a covert transmitter that SCOTT, CI #1 and CI #1's associate were talking about the price and acquisition of firearms. After the conversation, agents observed SCOTT exit the vehicle and enter the UPS facility through an employee-only entrance.

22. Immediately following the meeting, CI #1 proceeded to a pre-designated meeting location where he/she advised the agents that he/she had discussed the types of firearms that he/she wished to purchase from SCOTT. CI #1 told the agents that SCOTT did not have the firearms with him at the time, but that SCOTT told him/her to meet him back in the UPS parking lot at 10:00pm so he could sell CI #1 the firearms.

23. At approximately 6:30pm, surveillance units drove past the aforementioned blue Toyota Camry that SCOTT was seen driving and observed Maryland license plate 3DH N49. A query of the license plate through the Maryland Motor Vehicle Administration revealed that the 2002 Toyota Camry bearing VIN # 4T1BE32K72U563855 is registered to Jason Thomas SCOTT,

24. At approximately 9:15pm, surveillance was initiated on SCOTT's vehicle in the UPS parking lot as well as at SCOTT's residence. Agents observed SCOTT leave the UPS facility and enter his blue Toyota Camry. Surveillance units attempted to follow SCOTT, however he drove in a reckless manner and surveillance was terminated. Approximately twenty minutes later, surveillance units at SCOTT's residence observed the blue Toyota Camry pull into the driveway of                      and observed SCOTT enter the residence.

25. After numerous unmonitored conversations over the telephone that evening, SCOTT and CI #1 finally agreed to meet in a 7-11 parking lot in the Prince George's County, MD area.

26. At approximately 10:00pm, CI #1 was provided with a recorder/transmitter and $3000 of pre-recorded United States currency as buy money to purchase firearms. At approximately 10:45pm, surveillance units observed SCOTT's vehicle leave his residence. At approximately 11:00pm, SCOTT and CI #1 met at the 7-11 parking lot. At that same time, a marked PGPD police cruiser pulled into the parking lot of the 7-11 and SCOTT immediately left the area without selling the firearms to CI #1.

27. CI #1 then proceeded to a pre-designated meeting location where agents retrieved the recorder/transmitter and $3000 of pre-recorded buy money. CI #1 advised the agents that he/she

6

observed a large bag consistent with that of a duffle bag used to carry firearms sitting on the rear seat of SCOTT's vehicle.

## IDENTIFICATION OF SCOTT ON JUNE 8, 2009

28. On or about June 8, 2009, agents obtained a Maryland Motor Vehicle Administration (MVA) photograph of Jason Thomas SCOTT               . Agents determined that SCOTT matched the individual that they observed meet with CI #1 on or about June 5, 2009.  On June 8, 2009, CI #1 positively identified the MVA photo of SCOTT as the individual he/she knows as "Jason".

## SURVEILLANCE OF HUNTER ON JUNE 10, 2009 AND

## EVIDENCE RELATED TO 2456 ELVANS ROAD, S.E., WASHINGTON, D.C

29. On or about June 10, 2009, surveillance was established on the UPS parking lot in an effort to positively identify HUNTER.  At approximately 6:15 PM, surveillance observed a gray Lincoln Town Car bearing Maryland license plate 2CV F84 parked in the UPS parking lot occupied by an individual matching the description of HUNTER.  A Chrysler Pacifica bearing Maryland license plate 957M170 pulled up to the Lincoln Town Car where a black female (later identified by law enforcement as Zina Deneen Hunter, B/F,              and a black male (later identified by law enforcement as Steve Allen Williams, B/M,              had a brief conversation with HUNTER.  HUNTER then exited his vehicle and entered the UPS facility via an employee-only entrance.

30. Surveillance units observed Mr. Williams enter the Lincoln Town Car and follow the Chrysler Pacifica driven by Ms. Hunter out of the UPS parking lot southbound on Ardwick-Ardmore Road.

31. A query of the Lincoln Town Car's license plate through the Maryland Motor Vehicle Administration revealed that the license plate did not belong on that particular vehicle.  A uniformed PGPD Officer was summoned and the officer executed a traffic stop.  Mr. Williams identified himself to the police officer as Ms. Hunter's boyfriend and stated that the Lincoln Town Car belonged to Ms. Hunter's son Marcus HUNTER.

32. Ms. Hunter, who was also present during the traffic stop, told the officer that the Lincoln Town Car belonged to her son and that he lived with her at

33. Because the vehicle was improperly registered, it was towed to an impound lot in Prince George's County. A cursory inventory search of the vehicle revealed several pieces of electronics such as a flat screen television and tool sets in the trunk.

34. Through the use of available law enforcement and commercial databases, it was determined that HUNTER's primary residence is 2456 ELVANS ROAD SOUTHEAST, WASHINGTON, DC, 20020. Subsequent surveillance operations during the second, third and fourth week of June 2009 confirmed the presence of a gray Lincoln Town Car bearing Maryland license plate 9FD T24 parked in front of 2456 ELVANS ROAD SOUTHEAST, WASHINGTON, DC. A query of the license plate through the Maryland Motor Vehicle Administration revealed that the 1995 Lincoln Town Car bearing VIN # 1LNLM81W4SY621230 is registered to Marcus Dermanellian HUNTER.

### IDENTIFICATION OF HUNTER ON JUNE 17, 2009

35. On or about June 17, 2009, agents obtained a Maryland Motor Vehicle Administration (MVA) photograph of Marcus Dermanellian HUNTER                . Agents determined that HUNTER matched the individual that they observed driving the gray Lincoln Town Car on or about June 10, 2009. On June 17, 2009, CI #1 positively identified the MVA photo of HUNTER as the individual he/she knows as "Marcus".

### CONTROLLED PURCHASE ON JUNE 17, 2009

36. On or about June 17, 2009, at approximately 5:00pm, CI #1 was searched for the presence of contraband with negative results. CI #1 was provided with a recorder/transmitter and $3000 of pre-recorded United States currency as buy money to purchase an unknown quantity of firearms from SCOTT. The CI was followed to the UPS parking lot where surveillance units observed CI #1 park his/her vehicle.

37. At approximately 5:15pm, surveillance was initiated on the UPS parking lot in an attempt to initiate face-to-face contact between CI #1 and either SCOTT or HUNTER to arrange the purchase of firearms. At approximately 6:00pm, surveillance units observed SCOTT's blue Toyota Camry enter the UPS parking lot and park. CI #1 observed SCOTT's arrival and approached him, advising that he/she was still interested in purchasing firearms from SCOTT.

38. Surveillance units were able to hear via a covert transmitter that SCOTT was willing to sell CI #1 several different kinds of firearms, but that SCOTT had to go home to get the firearms and that CI #1 should meet him back at the UPS parking lot at 11:00pm. Immediately following this meeting, CI #1 proceeded to a pre-designated meeting location where agents retrieved the recorder/transmitter and $3000 of pre-recorded buy money.

39. At approximately 10:00pm, CI #1 was searched for the presence of contraband with negative results. CI #1 was provided with a recorder/transmitter and $3000 of pre-recorded buy money to purchase firearms from SCOTT. The CI was followed to the UPS parking lot where surveillance units observed CI #1 park his/her vehicle.

40. At approximately 11:10pm, surveillance units observed SCOTT's blue Toyota Camry enter the UPS parking lot. CI #1 purchased four (4) firearms from SCOTT for $3000 of pre-recorded buy money. At approximately 11:20pm, agents observed CI #1's vehicle leave the UPS parking lot.

41. Immediately following the controlled purchase of the firearms, CI #1 proceeded to a pre-designated meeting location where agents debriefed CI #1 and retrieved the recorder/transmitter and contraband firearms. Agents retrieved four (4) firearms from the backseat of CI #1's vehicle. The purchased firearms were checked through the National Criminal Information Center (NCIC) to determine their stolen status. The firearms purchased from SCOTT are described as the following:

    a. Bersa, Model Thunder, .380 caliber semi-automatic pistol, bearing serial number 997556 (reported as stolen from a Federal Firearms Licensee in Woodbine, MD on 5/27/2009).

    b. DPMS, Model AR-15, .223 caliber semi-automatic rifle, bearing serial number F120056K (not reported as stolen).

    c. Olympic Arms Inc, Model K3B, .223 caliber semi-automatic rifle, bearing serial number JF4503 (reported as stolen from a Federal Firearms Licensee in Woodbine, MD on 5/27/2009).

    d. Olympic Arms Inc, Model K3B, .223 caliber semi-automatic rifle, bearing serial number JF5331 (reported as stolen from a Federal Firearms Licensee in Woodbine, MD on 5/27/2009).

    Your affiant knows from his training and experience that none of the above firearms are manufactured in the state of Maryland and therefore had to travel by some means into the state of Maryland via interstate and/or foreign commerce.

42. On that same date, CI #1 told the agents that SCOTT had again informed him/her that ATF was looking for the firearms which he/she was purchasing and that the serial numbers should be obliterated to defeat law enforcement efforts at identifying the firearms.

43. CI #1 further advised that he/she asked SCOTT if they could meet the following day to obtain additional firearms, but SCOTT declined advising that they could not meet because he and an individual that SCOTT referred to as "his boy" (later identified as HUNTER) were going to attempt to acquire more

firearms that day. CI #1 told agents that SCOTT agreed to meet again later in the week to sell CI #1 additional firearms.

## UNMONITORED CONTACTS ON JUNE 18, 2009

44. On or about June 18, 2009, CI #1 had several unmonitored conversations with SCOTT regarding the acquisition of an additional twenty (20) firearms. According to CI #1, SCOTT told CI #1 that he had been awake for an extended period of time and therefore it would be HUNTER who would meet with CI #1 on the following day. SCOTT told CI #1 that HUNTER would sell CI #1 up to twenty (20) firearms for $7500.

## CONTROLLED PURCHASE ON JUNE 19, 2009

45. On or about June 19, 2009, at approximately 12:00pm, CI #1 and his/her vehicle were searched for the presence of contraband with negative results. CI #1 was provided with a recorder/transmitter and $7500 of pre-recorded United States currency as buy money to purchase approximately twenty (20) firearms from HUNTER. The CI was followed to the UPS parking lot where surveillance units observed CI #1 park his/her vehicle.

46. On the same date at approximately 1:15pm, HUNTER's gray Lincoln Town Car was observed entering the UPS Parking Lot. Agents heard CI #1 via a covert transmitter say "that's him, he's here". Agents observed the vehicle driven by an individual matching HUNTER's MVA photo pull into the parking space next to CI #1's vehicle.

47. HUNTER and the CI had a brief conversation at the open trunk of HUNTER's vehicle. Agents utilizing video surveillance observed and recorded HUNTER and CI #1 handling large items in the trunk of HUNTER's vehicle and also observed what appeared to be several firearms as HUNTER and CI #1 loaded the items into duffel bags. Agents observed CI #1 place the duffel bags in the backseat of his/her vehicle and conduct a hand-to-hand transaction where he/she provided HUNTER with the $7500 of pre-recorded buy money.

48. Immediately following the controlled purchase of the firearms, CI #1 proceeded to a pre-designated meeting location where agents retrieved the recorder/transmitter and contraband firearms. Agents retrieved two duffel bags from the backseat of CI #1's vehicle containing a total of nine (9) firearms. The purchased firearms were checked through NCIC to determine their stolen status. The firearms purchased from HUNTER are described as the following:

   a. Olympic Arms Inc, Model M.F.R., .223 caliber semi-automatic rifle, bearing an obliterated serial number (could not determine status as the serial number is required).

   b. Olympic Arms Inc, Model M.F.R., .223 caliber semi-automatic rifle, bearing an obliterated serial number (could not determine status as the serial number is required).

   c. Taurus, Model Judge, .410 caliber revolver bearing an obliterated serial number (could not determine status as the serial number is required).

   d. Intratec, Model TEC-DC9, 9mm caliber semi-automatic pistol, bearing serial number D016485 (not reported as stolen).

   e. Intratec, Model TEC-DC9, 9mm caliber semi-automatic pistol, bearing serial number D016487 (not reported as stolen).

   f. Benelli, Model Nova, 12 Gauge caliber pump action shotgun, bearing serial number V363211 (not reported as stolen).

   g. Arsenal Co. Bulgaria, Model SLR96, 7.62mm caliber semi-automatic rifle, bearing serial number BA361905 (reported as stolen from a residence in Prince Georges County, MD).

   h. Armscor of the Philippines, Model AK47 / 22, .22 caliber semi-automatic rifle, bearing serial number A604260 (not reported as stolen).

   i. DPMS, Model AR-15, .223 caliber semi-automatic rifle, bearing serial number F116974K (not reported as stolen).

Your affiant knows from his training and experience that none of the above firearms are manufactured in the state of Maryland and therefore had to travel by some means into the state of Maryland via interstate and/or foreign commerce.

**CONTROLLED TELEPHONE CALL ON JUNE 19, 2009**

49. Immediately following the aforementioned controlled purchase of firearms, a consensually monitored telephone call was placed by CI #1 to HUNTER at telephone number (202) 436-0257. During the call, CI #1 asked HUNTER why he/she only received nine firearms instead of the twenty agreed upon between CI #1 and SCOTT earlier in the week. HUNTER advised that he had several of the firearms that he had intended to sell to CI #1 still in his possession because he was attempting to obliterate the serial numbers. HUNTER also advised CI #1 that SCOTT still had several of the .22 caliber pistols with the silencers. HUNTER agreed to meet later that afternoon and give CI #1 the additional firearms that HUNTER owed CI #1.

**ADDITIONAL CONTROLLED PURCHASE ON JUNE 19, 2009**

50. On or about June 19, 2009, at approximately 5:45pm, CI #1 was provided with a recorder/transmitter. Surveillance units observed CI #1 park his/her vehicle in the parking lot of the SunTrust bank which is located at 8211 Ardwick Ardmore Rd, Landover, MD. At approximately 5:50pm, agents observed HUNTER's gray Lincoln Town Car enter the SunTrust Bank parking lot. Agents heard CI #1 via a covert transmitter meet with HUNTER and obtain two additional firearms.

51. Immediately following this controlled purchase of firearms, CI #1 proceeded to a pre-designated meeting location where agents retrieved the recorder/transmitter and contraband firearms. Agents retrieved two (2) firearms from the trunk of CI #1's vehicle. The purchased firearms were checked through NCIC to determine their stolen status. The firearms purchased from HUNTER are described as the following:

   a. Colt, Model AR-15 Sporter, .223 caliber semi-automatic rifle, bearing serial number ST002622 (reported as stolen from a residential burglary in Prince Georges County, MD).

b. Olympic Arms, Model M.F.R., .223 caliber semi-automatic rifle, bearing serial number JF5333 (reported as stolen from a Federal Firearms Licensee in Woodbine, MD on 5/27/2009).

Your affiant knows from his training and experience that none of the above firearms are manufactured in the state of Maryland and therefore had to travel by some means into the state of Maryland via interstate and/or foreign commerce.

## UNMONITORED TELEPHONE CONTACT ON JUNE 23, 2009
## AND EVIDENCE RELATED TO 2456 ELVANS ROAD, S.E.

52. On or about June 23, 2009, during an unmonitored telephone call between CI #1 and HUNTER, HUNTER told CI #1 that he had six (6) firearms in his possession at his residence but that he was not prepared to sell them to CI #1 until HUNTER moved to another residence. HUNTER specified that he currently lives in a bad neighborhood. Furthermore, HUNTER told CI #1 that SCOTT has additional firearms that he may be willing to sell to CI #1.

## ADDITIONAL SURVEILLANCE AND EVIDENCE RELATED TO
## 2456 ELVANS ROAD, S.E., WASHINGTON, D.C. AND 601 PRITCHARD LANE

53. On multiple occasions and as recently as June 29, 2009, surveillance units observed SCOTT's blue Toyota Camry parked in front of

54. Surveillance units were unable to locate HUNTER's gray Lincoln Town Car at the vehicle's legally registered address of                                          However, on multiple occasions and as recently as June 30, 2009, surveillance units observed HUNTER's gray Lincoln Town Car in front of 2456 Elvans Road Southeast, Washington, DC 20020.

## CONCLUSION

Based on the facts set forth above, your affiant submits that there is probable cause to believe that evidence of violations of federal firearms laws, including 18 U.S.C. § 922(j) and 18 U.S.C. § 922(k), will be discovered and recovered inside of 2456 Elvans Road Southeast, Washington, DC 20020, and in a 1995 gray Lincoln Town

Car, bearing VIN# 1LNLM81W4SY621230, and that the items set forth in Attachment B are evidence, fruits, and instrumentalities of the violations alleged herein.

_____

David Cheplak
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives

Subscribed and sworn before me this _____ day of June, 2009

_____

John M. Facciola
United States Magistrate Judge